**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELVIN TALLY,

       Plaintiff,

v.                                                          No. CV 20-409 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Elvin Tally's *Motion to Reverse and Remand for Rehearing with Supportive Memorandum*, (Doc. 27), (the "Motion"), filed May 11, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 29), filed July 12, 2021; and Mr. Tally's *Reply to Brief in Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 32), filed July 27, 2021.

Mr. Tally applied for supplemental security income on December 7, 2016, and disability insurance benefits on January 5, 2017, alleging disability beginning November 2, 2016. (Administrative Record "AR" 193-201, 202-203). In his applications, Mr. Tally claimed he was limited in his ability to work due to hepatitis C, chronic liver cirrhosis, Type II diabetes, high blood pressure, artificial right knee, neuropathy, and chronic ear infections. (AR 194). Mr. Tally's applications were denied initially on June 30, 2017, (AR 113-116), and upon reconsideration on October 18, 2017, (AR 123-126). Mr. Tally

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

requested a hearing before an Administrative Law Judge ("ALJ"), (AR 127-128), which was held on May 2, 2019, before ALJ Michael Leppala, (AR 14-33).

At the hearing, Mr. Tally appeared before ALJ Leppala with Donna Baslee as his attorney and with impartial Vocational Expert ("VE") Leslie J. White. (AR 17). ALJ Leppala issued his decision on July 3, 2019, finding Mr. Tally not disabled at any time between his alleged disability onset date through the date of his decision. (AR 28). Mr. Tally then requested review of ALJ Leppala's decision before the Appeals Council, which was denied on February 20, 2020. (AR 3-5). Mr. Tally now challenges ALJ Leppala's July 3, 2019 decision denying his claims for supplemental security income and disability insurance benefits. *See* (Doc. 27).

In his Motion, Mr. Tally argues ALJ Leppala erred in five respects: (1) in assigning less than controlling weight to the opinions of Mr. Tally's treating physician, Dr. Nii Tetteh Tsuru Addy, D.O., ALJ Leppala failed to perform the requisite two-part analysis; (2) he failed to sufficiently explain the basis for affording only "some weight" to the May 2017 and March 2019 opinions of Mr. Tally's treating nurse, Susan Blankenship, N.P.; (3) he failed to sufficiently explain the reasons he rejected the finding of the consultative psychological examiner, Dr. Brian Whitlock, Ph.D., "that Mr. Tally would have difficulty adapting to changes in the workplace and managing stress due to his psychological distress"; (4) he failed to meaningfully discuss why the medical evidence did not support Mr. Tally's complaints that depression and fatigue interfere with his ability to function; and (5) he failed to make specific findings regarding the demands of Mr. Tally's past work as a gas line inspector, as the job is generally performed. (Doc. 27 at 5-22) (quotation marks omitted).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Leppala erred in his consideration of Dr. Addy's opinion, the Court finds Mr. Tally's Motion is well-taken and should be **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

I.  **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353

F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

In his application, Mr. Tally claimed he was limited in his ability to work due to hepatitis C, chronic liver cirrhosis, Type II diabetes, high blood pressure, artificial right knee, neuropathy, and chronic ear infections. (AR 194). At step one, ALJ Leppala determined Mr. Tally had not engaged in substantial gainful activity since November 2, 2016, the alleged disability onset date. (AR 19). At step two, ALJ Leppala found Mr.

Tally had the severe impairments of status post right knee replacement, cirrhosis of the liver, and hepatitis C. (AR 19).

At step three, ALJ Leppala determined Mr. Tally's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 21). ALJ Leppala then found Mr. Tally had the RFC to:

> occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds, stand[] and/or walk[] for about six hours in an eight-hour workday, and sit[] for about six hours in an eight-hour workday, all with normal breaks . . . occasionally climb[] ramps or stairs, never climb[] ladders, ropes, or scaffolds, frequently balance[e], frequently stoop[], occasionally kneel[], crouch[], and crawl[].

(AR 22).

In formulating Mr. Tally's RFC, ALJ Leppala stated he considered his symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling ("SSR") 16-3p. (AR 22). ALJ Leppala stated he also considered opinion evidence, consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (AR 22). He concluded that while some of Mr. Tally's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Tally described were not entirely consistent with the evidence in the record. (AR 22-23).

In evaluating the opinion evidence, ALJ Leppala gave "some weight" to the consultative psychological examiner, Dr. Whitlock, because his opinion of Mr. Tally's work limitations "was based on a single examination and overstates [Mr. Tally's] limitations[.]" (AR 24). With regard to the May 17, 2017 opinion of Mr. Tally's treating

6

physician, Dr. Addy, ALJ Leppala stated, "I accord this opinion *weight*, as it is inconsistent with laboratory findings showing undetectable viral load after four weeks of treatment." (AR 25) (emphasis added). ALJ Leppala noted that Mr. Tally's treating nurse, Susan Blankenship, was "not an acceptable medical source," but nevertheless afforded "some weight" to her May 2017 and March 2019 opinions of Mr. Tally's limitations. (AR 25). However, ALJ Leppala afforded "great weight" to the opinions of the state agency medical consultants, Drs. Tom Dees, M.D. and Charles M. Murphy, M.D., and to the opinion of the state agency psychological consultant, Dr. Sheri L. Tomak, Psy.D. (AR 25).

At step four, ALJ Leppala found that Mr. Tally is capable of performing his past relevant work as a gas line inspector, which "is classified as skilled work, generally performed at a light exertional level and actually performed at a medium exertional level." (AR 26) (citing the Dictionary of Occupational Titles (the "DOT") 953.367-010). In reaching this conclusion, ALJ Leppala relied on the testimony of VE White, who explained that an individual of Mr. Tally's age and with his education, work experience, and RFC could perform the job of a gas line inspector "as generally performed." (AR 26). ALJ Leppala concluded, therefore, that Mr. Tally is "not disabled," as defined by C.F.R. §§ 404.1520(f) and 416.920(f), and ended his analysis at step four. (AR 26-27)

**IV.  Analysis**

In his Motion, Mr. Tally presents five arguments. *See* (Doc. 26); (Doc. 27). First, he contends ALJ Leppala erred in rejecting Dr. Addy's May 17, 2017 opinion without first performing the two-part analysis, which is required when assigning less than controlling weight to a treating physician. (Doc. 27 at 5-12). Second, Mr. Tally argues

physician, Dr. Addy, ALJ Leppala stated, "I accord this opinion *weight*, as it is inconsistent with laboratory findings showing undetectable viral load after four weeks of treatment." (AR 25) (emphasis added). ALJ Leppala noted that Mr. Tally's treating nurse, Susan Blankenship, was "not an acceptable medical source," but nevertheless afforded "some weight" to her May 2017 and March 2019 opinions of Mr. Tally's limitations. (AR 25). However, ALJ Leppala afforded "great weight" to the opinions of the state agency medical consultants, Drs. Tom Dees, M.D. and Charles M. Murphy, M.D., and to the opinion of the state agency psychological consultant, Dr. Sheri L. Tomak, Psy.D. (AR 25).

At step four, ALJ Leppala found that Mr. Tally is capable of performing his past relevant work as a gas line inspector, which "is classified as skilled work, generally performed at a light exertional level and actually performed at a medium exertional level." (AR 26) (citing the Dictionary of Occupational Titles (the "DOT") 953.367-010). In reaching this conclusion, ALJ Leppala relied on the testimony of VE White, who explained that an individual of Mr. Tally's age and with his education, work experience, and RFC could perform the job of a gas line inspector "as generally performed." (AR 26). ALJ Leppala concluded, therefore, that Mr. Tally is "not disabled," as defined by C.F.R. §§ 404.1520(f) and 416.920(f), and ended his analysis at step four. (AR 26-27)

**IV.  Analysis**

In his Motion, Mr. Tally presents five arguments. *See* (Doc. 26); (Doc. 27). First, he contends ALJ Leppala erred in rejecting Dr. Addy's May 17, 2017 opinion without first performing the two-part analysis, which is required when assigning less than controlling weight to a treating physician. (Doc. 27 at 5-12). Second, Mr. Tally argues

ALJ Leppala failed to adequately explain his reasons for affording only some weight to Nurse Blankenship's May 2017 and March 2019 opinions. *Id.* at 12-15. Third, Mr. Tally argues ALJ Leppala failed to adequately explain his reasons for omitting Dr. Whitlock's mental limitations from Mr. Tally's RFC. *Id.* at 15-18. Fourth, he contends ALJ Leppala failed to adequately explain why the medical evidence did not support Mr. Tally's complaints that depression and fatigue interfere with his ability to function. *Id.* 18-20. Finally, Mr. Tally argues ALJ Leppala failed to make specific findings regarding the demands of a gas line inspector job as generally performed. *Id.* at 21-22. For these reasons, Mr. Tally asks the Court to reverse the Commissioner's decision and remand the matter for a new administrative hearing. *Id.* at 23

In response, the Commissioner acknowledges that ALJ Leppala erroneously "omitted a word when assigning the weight to Dr. Addy's opinion" but contends the error was technical and harmless. (Doc. 29 at 13). She further maintains that ALJ Leppala sufficiently explained his reasons for the weight he assigned Dr. Addy's opinion. *Id.* Next, the Commissioner argues ALJ Leppala "reasonably discounted" Nurse Blankenship's May 2017 and March 2019 opinions, explaining that he found Nurse Blankenship was not an acceptable medical source and that her limitations were not supported by physical examinations in the record, testing, or the consultative examinations. *Id.* at 14-16. The Commissioner further argues that ALJ Leppala reasonably accorded only some weight to Dr. Whitlock, because, as ALJ Leppala explained, Dr. Whitlock had only examined Mr. Tally once and his opinion was undermined by the fact that Mr. Tally never received specialized mental health treatment. *Id.* at 16-18.

8

With regard to Mr. Tally's subjective complaints, the Commissioner disputes that ALJ Leppala found Mr. Tally not credible, contending instead that ALJ Leppala found those complaints inconsistent with the objective medical evidence, and further that ALJ Leppala sufficiently addressed the complaints. *Id.* at 19-21 Finally, the Commissioner argues ALJ Leppala sufficiently addressed the demands of the gas line inspector job by stating that he relied on VE White's testimony describing the work. *Id.* at 21-24. As such, the Commissioner contends Mr. Tally's claim for disability was properly denied at the administrative level. *Id.* at 24.

### A. ALJ Leppala's Assessment of Dr. Addy's May 17, 2017 Opinion

The first issue Mr. Tally raises with ALJ Leppala's assessment of Dr. Addy's opinion focuses on ALJ Leppala's stated reasons for rejecting the opinion. (Doc. 27 at 7-9). Specifically, Mr. Tally contends ALJ Leppala improperly "made a medical finding of his own—that treatment [for hepatitis C] would make a hepatitis sufferer's fatigue disappear when the viral load became 'undetectable[,]'" and that the statement is "contrary to Dr. Addy's professional opinion that Mr. Tally's hepatitis was still an active medical problem even upon completion of treatment. *Id.* at 8-9 (quoting AR 25). The Commissioner disputes that ALJ Leppala made his own medical findings. (Doc. 29 at 12). The Commissioner contends instead that ALJ Leppala relied on the state agency medical reviewers, Drs. Murphy and Dees, who noted Mr. Tally's undetectable viral load in concluding he could perform a reduced range of light work. *Id.* at 12.

The second issue raised by Mr. Tally focuses on ALJ Leppala's purported failure, once rejecting Dr. Addy's opinion, to then consider the six factors set forth in 20 C.F.R. § 404.1527(c) in determining the weight to give the opinion. (Doc. 27 at 6-7, 9-12). Mr.

Tally contends the evidence in the record supports Dr. Addy's opinion regarding how fatigue, caused by Mr. Tally's impairments, would limit his work-related abilities. *Id.* at 10-12. Mr. Tally further argues that ALJ Leppala "would have been constrained" to adopt Dr. Addy's assessed limitations had he considered the six factors. *Id.* at 10. The Commissioner contends that ALJ Leppala did consider the factors. (Doc. 29 at 12). The Commissioner further argues that Mr. Tally's symptoms from cirrhosis of the liver and hepatitis C "improved by the time he completed hepatitis C treatment in June 2017[,]" and that his "lingering issues were mostly diabetes anxiety, depression, and insomnia that were treated with medication[.]" *Id.* at 13.

Although an ALJ is not required to discuss every piece of evidence, he is required, at a minimum, to evaluate and weigh every medical opinion in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)); *see also* 20 C.F.R. §404.1527(b)-(c); SSR 06-03p, 2006 WL 2329939. Every medical source opinion should be weighed by the ALJ in consideration of the following "deference factors":

1. the length of the treatment relationship and the frequency of examination;
2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
3. the degree to which the physician's opinion is supported by relevant evidence;
4. consistency between the opinion and the record as a whole;
5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and
6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d), 416.927(c)-(d).

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be]

10

clear to any subsequent reviewers" for the weight that they ultimately assign the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. App'x 880, 884 (10th Cir. 2007) (unpublished); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In addition, treating sources are generally entitled to more weight than other sources, given their treatment relationship with the claimant.[2] 20 C.F.R. § 404.1527(d)(2). Accordingly, ALJs must follow a particular two-step process when evaluating and weighing opinions from treating sources. 20 C.F.R. § 404.1527(b); *see Watkins*, 350 F.3d at 1300-01. First, the ALJ must determine whether the treating source's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Second, the ALJ must then determine whether those opinions were "consistent with the record as a whole." *Id.* If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. *Id.*

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference, and thus the ALJ must proceed to a third step. SSR 96-2p, 1996 WL 374188, at *4. In deciding the weight to afford a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(c)(1-6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified

---

[2] Social Security regulations related to the evaluation of medical evidence, including the opinions of treating physicians, were amended effective March 27, 2017. Because Mr. Tally's applications were filed on December 7, 2016, (AR 193-201), and January 5, 2017, (AR 202-203), the prior regulations set forth in § 404.1527 and § 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017") apply.

11

. . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188, at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" he gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion"). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

*1. Dr. Addy's May 17, 2017 Opinion*

Mr. Tally established care with Dr. Addy in November 2016 for hepatitis C evaluation. (AR 467). Mr. Tally visited Dr. Addy monthly—and more frequently on some occasions—over the next nine months. *See generally* (AR 467-522). During most of these visits, Mr. Tally complained of fatigue, among other things. *See* (AR 467, 471, 474, 487, 495, 498, 505); *cf.* (AR 479, 482, 492, 502).

As his primary treating physician, Dr. Addy assessed and treated Mr. Tally for chronic viral hepatitis C, cirrhosis of the liver, Type II diabetes, hypertension, chronic fatigue, and encephalopathy. (AR 469); *see also generally* (AR 467-522). On March 13, 2017, Mr. Tally began treatment with Ribavirin and Epclusa for his hepatitis C symptoms. (AR 487, 491). On April 17, 2017, Dr. Addy noted that, after four weeks of treatment, Mr. Tally's viral load was undetectable. (AR 495). On June 12, 2017, Dr. Addy noted further that Mr. Tally's twelve-week "end of treatment" viral load was also undetectable, and that he "ha[d] a 95% chance of sustain[ed] vir[al] response or cure." (AR 505).

On May 17, 2017, Dr. Addy completed a "Medical Source Statement: Hepatitis C" in connection with Mr. Tally's claim for Social Security benefits. (AR 517). Dr. Addy identified the following symptoms affecting Mr. Tally: chronic fatigue, right upper quadrant pain, enlarged liver, muscle and joint aches, abdominal pain, difficulty concentrating, weakness, enlarged spleen, and anemia. (AR 517). Dr. Addy checked "yes" to the question of whether "the degree of fatigue does not correlate with the severity of hepatitis C or with the degree of elevation of laboratory tests." (AR 517). However, Dr. Addy further indicated that Mr. Tally was not a malingerer and that

13

emotional factors contribute to the severity of Mr. Tally's symptoms and functional limitations. (AR 518). He explained that Mr. Tally's "physical impairments plus [his] emotional impairments [of depression and anxiety] [are] reasonably consistent with the symptoms and functional limitations described in this evaluation[.]" (AR 518). Dr. Addy indicated that, on a range of never, rarely, occasionally, frequently, and constantly, Mr. Tally's experience of fatigue is frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks. (AR 518).

In the Medical Source Statement, Dr. Addy found, given Mr. Tally's impairments, that he was limited to the following: walking only one city block without rest or severe pain; sitting for only thirty minutes without needing to get up; standing for only thirty minutes without needing to sit or move; sitting and standing or walking for only "about" two hours total in an eight-hour workday; never lifting and carrying any weight "in a competitive work situation"; never twisting, stooping, crouching, climbing ladders or climbing stairs; requiring more than ten unscheduled breaks during an average workday due to his pain, medication side effects, fatigue, and nausea; and requiring rest for more than two hours in an average workday before returning to work. (AR 518-520). Dr. Addy ultimately opined that Mr. Tally was incapable of even "low stress" jobs, (AR 518), and that he could "not perform work at this time[,]" (AR 520).

### 2. ALJ Leppala's RFC Assessment

In determining Mr. Tally's RFC, ALJ Leppala stated he gave Dr. Addy's Medical Source Statement opinion "weight," because it was "inconsistent with laboratory findings showing undetectable viral load after four weeks of treatment." (AR 25). ALJ Leppala's RFC assessment incorporates only Dr. Addy's limitation that Mr. Tally could never climb

14

ladders, rejecting the remainder of his limitations. (AR 22); *cf.* (AR 518-520). As such, ALJ Leppala was required to adequately explain why he omitted these limitations from his RFC determination, considering the factors outlined in 20 C.F.R. § 404.1527(c)(1-6). *See* SSR 96-8p, 1996 WL 274184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

### 3. Whether ALJ Leppala Committed Harmful Legal Error

ALJ Leppala discounted Dr. Addy's May 17, 2017 Medical Source Statement opinion, rejecting all but one of his assessed limitations, on the grounds that Mr. Tally's viral load had become undetectable. (AR 25). First, the Court is confounded by ALJ Leppala's reasoning here. He appears to suggest that once Mr. Tally's hepatitis C viral load became undetectable, there was necessarily a reduction in the intensity of the symptoms Dr. Addy listed in the Medical Source Statement (e.g., his fatigue, muscle and joint aches, abdominal pain, weakness, difficulty concentrating, right upper quadrant pain, enlarged liver and spleen, and anemia. (AR 517). ALJ Leppala seems to conclude that, as a result of the purported reduction in the intensity of his symptoms, Mr. Tally could perform a greater range of work than Dr. Addy had opined. However, ALJ Leppala fails to explain how he arrived at this conclusion. He offers no support otherwise in the record.

The Commissioner contends ALJ Leppala relied on the state agency medical consultants, Drs. Murphy and Dees, who "noted [Mr. Tally's] undetectable viral load when they concluded [Mr. Tally] could perform a reduced range of light work." (Doc. 29 at 12). ALJ Leppala, however, makes no reference to either these doctors or their

opinions in his analysis of Dr. Addy's opinion. *See* (AR 24-25). Even in his analysis of the opinions by the state agency medical consultants, ALJ Leppala makes no mention of their findings regarding an undetectable hepatitis C viral load. *See* (AR 25). The Court "may not adopt a post hoc rationalization for the ALJ's decision that is not apparent from the ALJ's own opinion." *McCray v. Social Security Administration*, 435 F.Supp.3d 1186, 1196 (D.N.M. 2020) (citing *Haga*, 482 F.3d at 1207-08); *see also Carpenter*, 537 F.3d at 1267 ("[j]udicial review is limited to the reasons stated in the ALJ's decision").

In any event, the opinions of these doctors do not appear to support any finding that once Mr. Tally's viral load became undetectable, he *necessarily* experienced a reduction in the intensity of the symptoms Dr. Addy listed in the Medical Source Statement. *See* (AR 81, 103). In June 2017, for example, Dr. Murphy noted Mr. Tally's fatigue and listed hepatitis C and treatment medication as a cause. (AR 81). In September 2017, Dr. Dees stated that, "[w]ith regard to his fatigue, the diagnosis of [chronic fatigue syndrome] cannot be made since there has been another cause, hep[atitis] C and [treatment medication]." (AR 103). He further noted that "new evidence in [the] file does not support *worsening* of condition[.]" (AR 103) (emphasis added).

In fact, the record contains significant evidence that, after his hepatitis C viral load became undetectable, Mr. Tally continued experiencing the symptoms, including fatigue, listed in Dr. Addy's Medical Source Statement. Four months after Mr. Tally completed hepatitis C treatment, for instance, he reported fatigue and malaise to Nurse Blankenship, and she assessed "[f]atigue, unspecified type[.]" (AR 324, 326). The next month, he complained of fatigue to Dr. Addy, who assessed "[c]hronic [f]atigue,

[u]nspecified[.]" (AR 471-472). Over the next year, through June 2017, Mr. Tally continued complaining of fatigue to Dr. Addy and Nurse Blankenship, who both continued to assess Mr. Tally for fatigue. (AR 474, 487, 491, 495, 498-499, 501, 505, 534-535, 582). He even complained of fatigue to Nurse Blankenship as recently as March 2019, which she assessed as chronic fatigue. (AR 776, 779-781).

ALJ Leppala failed to meaningfully explain why he discounted Dr. Addy's opinion in the May 17, 2017 Medical Source Statement. In particular, he failed to explain why the fact of Mr. Tally's undetectable hepatitis C viral load conflicted with Dr. Addy's opinion about Mr. Tally's symptoms and work-related limitations. The Court is thus left with no guidance to perform a meaningful review of ALJ Leppala's analysis. *See Langley*, 373 F.3d at 1118 (An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it") (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (quotation marks omitted).

Further, without ALJ Leppala having identified any support in the record, and absent any located by the Court, the Court must conclude ALJ Leppala interpreted the medical data himself, which is impermissible. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) ("[T]he ALJ erred in rejecting [the doctor's] opinions without adequate justification and in substituting [her] own medical judgment for that of mental health professionals.")

In sum, the Court finds ALJ Leppala's reason discussed above for discounting Dr. Addy's opinion, instead of affording the opinion controlling weight, to be insufficiently specific and thus unsupported by substantial evidence in the record. *See* 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). Accordingly, it constitutes harmful and reversible error. Therefore, the Court finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the second issue Mr. Tally raises concerning ALJ Leppala's alleged errors in rejecting Dr. Addy's opinion. Likewise, the Court will not address the parties' other remaining arguments.

## V.     Conclusion

For the foregoing reasons, the Court finds ALJ Leppala committed harmful legal error when he failed to meaningfully explain why the opinions of Mr. Tally's treating physician were inconsistent with the record. Because the Court finds this is a harmful error, the Court will not address the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Trujillo's *Motion to Reverse or Remand Decision of Administrative Law Judge*, (Doc. 26), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE